**James B. KING, Director, Office of Personnel Management, Petitioner,**

v.

**Daino H. JEROME,**

and

**Merit Systems Protection Board, Respondent.**

**No. 94–3161.**

United States Court of Appeals, Federal Circuit.

Dec. 7, 1994.

Rehearing Denied; Suggestion for Rehearing En Banc Declined Feb. 23, 1995.

Franklin E. White, Jr., Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued, for petitioner. With him on the brief, were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief, were Lorraine Lewis, Gen. Counsel and Steven E. Abow, Office of Gen. Counsel, Office of Personnel Management, Washington, DC, of counsel.

Eric D. Flores, Atty., Merit Systems Protection Bd., Washington, DC, argued, for respondent. With him on the brief, were Mary L. Jennings, Acting Gen. Counsel and Martha B. Schneider, Asst. Gen. Counsel. George M. Chuzi, Kalijarvi & Chuzi, P.C., Washington, DC, for respondent, Daino H. Jerome.

Before MAYER, Circuit Judge, SMITH, Senior Circuit Judge, and PLAGER, Circuit Judge.

MAYER, Circuit Judge.

The Director of the Office of Personnel Management petitions for review of the Merit Systems Protection Board's order, 59 M.S.P.R. 134 (1993), which denied the Director's petition for reconsideration of the board's final decision in *Jerome v. Small Business Administration,* 56 M.S.P.R. 181 (1993). In its final decision, the board concluded that the Small Business Administration transferred an employee from the agency's Dallas office in bad faith and thus failed to provide the interim relief ordered by the board. Because the board does not have authority to review an agency's determination that returning an employee to his former place of employment would be unduly disruptive, we reverse.

### Background

Citing unacceptable performance, the Small Business Administration (SBA) removed Daino H. Jerome from the position of criminal investigator in its Dallas office. Jerome appealed and the Merit Systems Protection Board ordered SBA to retroactively restore him to his former position. The board also ordered SBA to provide Jerome interim relief pursuant to section 6 of the Whistleblower Protection Act of 1989, 5 U.S.C. § 7701(b) (1988 & Supp. V 1993).

Using the procedures prescribed by section 7701(b)(2)(A)(ii),* SBA determined that returning Jerome to the Dallas office would be "unduly disruptive" to the work environment in that office. It therefore transferred him to the Chicago office. To comply with the requirements of section 7701(b)(2)(B), SBA gave him full pay, benefits, and special travel allowances.

On March 10, 1992, SBA petitioned the board for review of the initial decision. On March 12, 1992, Jerome filed a motion to dismiss the petition alleging that the agency had not complied with the board's order for interim relief. Specifically, Jerome alleged that SBA acted in bad faith when it concluded that his presence would cause undue disruption and that this decision was a mere pretext for the reprisal of a cross-country transfer.

On January 4, 1993, the full board dismissed SBA's petition for review pursuant to 5 C.F.R. § 1201.115(b)(4) (1993). The board held that agency undue disruption determinations are subject to a "bad faith" review. Reviewing the decision to transfer Jerome from Dallas to Chicago, it found that SBA had acted in bad faith, and ordered SBA to cancel Jerome's removal and restore him to his prior position. 56 M.S.P.R. at 186. On May 7, 1993, the Office of Personnel Management (OPM) petitioned the board for reconsideration of the final order. The full board denied OPM's petition on October 4, 1993. The Director of OPM then petitioned this court for review of the board's final decision.

## Discussion

█ The board's initial decision ordered SBA to grant "interim relief to [Jerome] in accordance with Section 6 of Whistleblower Protection Act of 1989, 5 U.S.C. § 7701(b)(2)(A)." Section 7701(b)(2) provides:

(A) If an employee or applicant for employment is the prevailing party in an appeal under this subsection, the employee or applicant shall be granted the relief provided in the decision effective upon the making of the decision, and

remaining in effect pending the outcome of any petition for review under subsection (e), unless—

(i) the deciding official determines that the granting of such relief is not appropriate; or

(ii)(I) the relief granted in the decision provides that such employee or applicant shall return or be present at the place of employment during the period pending the outcome of any petition for review under subsection (e); and

(II) the employing agency, subject to the provisions of subparagraph (B), determines that the return or presence of such employee or applicant is unduly disruptive to the work environment.

(B) If an agency makes a determination under subparagraph (A)(ii)(II) that prevents the return or presence of an employee at the place of employment, such employee shall receive pay, compensation, and all other benefits as terms and conditions of employment during the period pending the outcome of any petition for review under subsection (e).

This is a systematic process for giving an employee interim relief after a favorable initial decision by an administrative judge, which commonly includes, as here, an order that the agency return the employee to duty. This relief takes effect immediately unless the administrative judge determines that returning the employee is not appropriate, *id.* § 7701(b)(2)(A)(i), or the agency determines that returning the employee would be unduly disruptive to the workplace, *id.* § 7701(b)(2)(A)(ii). The statute thus gives the agency discretion to determine whether returning the employee would be unduly disruptive regardless of whether the administrative judge believes that returning the employee is appropriate. The agency, however, does not have unfettered discretion. If it determines that returning the employee would be unduly disruptive, it must give him the same "pay, compensation, and all other benefits as terms and conditions of employment during the period pending the outcome of [the] petition for review." *Id.* § 7701(b)(2)(B).

---

* Except as otherwise shown, all section references are to Title 5 of the United States Code.

Neither section 7701 nor any other statute explicitly provides for any review of an agency's determination that returning an employee would be unduly disruptive. Beginning with *Ginocchi v. Department of the Treasury*, 53 M.S.P.R. 62 (1992), however, the board concluded that Congress had left a gap in section 7701 because it did not provide for review of that determination. The board decided, therefore, that it must review undue disruption determinations to prevent detailing, assigning, or restricting the duties of an employee in bad faith during the interim relief period. In *Ginocchi*, the board sought "[t]o guard against the possibility of an employee's having to suffer the assignment of inappropriate duties as the result of an agency's abuse of the authority to determine that the employee's 'return' would be unduly disruptive, but his 'presence' would not be." 53 M.S.P.R. at 70. The board also said that "if the agency's decision is discriminatory, demeaning, or inherently unsafe, such action will be held to be in bad faith, and its petition for review will be dismissed." *Id.* The only law, rule or regulation cited as a basis for this review was the board's general power to enforce its orders under 5 U.S.C. § 1204(a)(2) (1988 & Supp. V 1993), which gives it authority to "order any Federal agency or employee to comply with any order or decision issued by the board under [its adjudicatory authority] and enforce compliance with any such order."

In support of its bad faith review process, the board argues here that "review of agency undue disruption determinations is the most effective and efficient means of ensuring that agencies do not take retaliatory actions against employees in the guise of providing interim relief." Similarly, it says that "[i]t would be absurd to require the time and expense of an additional administrative action to protect an employee from abuse in the interim relief process when the board can effectively protect the employee at little or no marginal cost."

■ We begin our analysis of the board's power to review an agency's undue disruption determination from the foundation that the board has no plenary jurisdiction. *Cowan v. United States*, 710 F.2d 803, 805

(Fed.Cir.1983). We construe its jurisdiction narrowly, it includes only those actions specifically granted by some law, rule, or regulation. *Id.; Van Werry v. Merit Sys. Protection Bd.*, 995 F.2d 1048, 1050 (Fed.Cir.1993). If we believe the board's interpretation of section 7701(b)(2) is "contrary to the intent of Congress, as divined from the statute and its legislative history," we owe the board's statutory interpretation no deference. *Muwwakkil v. Office of Personnel Management*, 18 F.3d 921, 925 (Fed.Cir.1994).

With this in mind, it is apparent there is no justification for the board to conduct a bad faith review in light of the precise statutory language and framework set out by Congress in section 7701(b)(2). The board cannot use section 1204(a)'s very general grant of authority to create a power of review where the statutory scheme indisputably contemplates no such power. By the language of the statute, Congress intended the agency to determine the effect of returning an employee to the workplace and gave it discretion when it determined that returning him would cause undue disruption. Congress did not provide for any review of this decision. Rather, to protect the employee, it provided that if the agency did not return him to work, it must still give him all pay, benefits, and other terms and conditions of employment he would have received, absent his suspension.

This interpretation of the language and framework of section 7701(b)(2) is supported by the limited legislative history pertaining to the interim relief provision, which was added by amendment to section 7701 by section 6 of the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 33. The Senate Report specifically noted that the interim relief provision is "a change to current law in that under current law, employees are not granted any relief ordered by a regional office of the Board until they win at the full Board." S.Rep. No. 413, 100th Cong., 2d Sess. 35 (1988). It highlighted two specific exceptions: "Relief will not be granted if the deciding Board official determines that granting such relief would not be appropriate; in addition, an employee need not be returned to the workplace if the employing agency determines that returning that em-

ployee to the workplace would be unduly disruptive. If the employing agency determines that an employee should not be returned to the workplace, the employee will nevertheless receive the pay and benefits s/he would receive if s/he were working." *Id.*

■ An agency complies with the interim relief provision when it makes a determination that returning the employee would cause undue disruption and provides the employee with the same pay, compensation, and other benefits of his previous position during the pendency of the agency's petition for review. The board may review this process, but the scope of review is limited to determining whether the agency actually made an undue disruption determination and whether the employee has received appropriate pay and benefits. *See DeLaughter v. United States Postal Service,* 3 F.3d 1522 (Fed.Cir.1993).**

*Kerr v. National Endowment for the Arts,* 726 F.2d 730 (Fed.Cir.1984), on which the board relies, is not to the contrary. The board there ordered the agency to restore Kerr to the *status quo ante* as part of a final order, *id.* at 731, but held that it could not review the substance of the agency's compliance with the order beyond determining whether the agency had formally reinstated Kerr at his pay grade, *id.* at 732. This court reversed, holding that the board could review the substance of the agency's actions, beyond the formal reinstatement of Kerr, to determine whether Kerr was in fact returned to the *status quo ante. Id.* at 732–34.

Unlike *Kerr,* here the board was reviewing compliance with statutory guidelines governing interim relief, not compliance with an order. The administrative judge had no authority to issue a final order; he entered only an order for interim relief pending the agency's appeal to the full board. Thus, rather than falling under the broad general powers of the board to enforce orders made within its adjudicatory jurisdiction under section 1204(a)(2), the board and the agency were bound by the overriding statutory guidelines found in section 7701(b)(2).

The board argues that absent a bad faith review of an undue disruption determination, an agency could, in the guise of providing interim relief, transfer employees for retaliatory purposes without fear of review. But the injurious personnel practices contemplated by the board are already prohibited by 5 U.S.C. § 2302 (1988 & Supp. V 1993). If Jerome believed that the agency had committed a prohibited personnel practice, such as transferring him in retaliation for filing an appeal, he had access to the Office of Special Counsel. *Id.* §§ 1214 and 2302(b)(9). The Special Counsel can investigate allegations of prohibited personnel practices, secure corrective action, and bring action against employees who commit such acts. *Id.* § 1215. And if Jerome had evidence that SBA engaged in discrimination, he could go to the Equal Employment Opportunity Commission.

The board argues that these remedies do not give the employee as effective and efficient relief as its review does. It argues that "review of agency undue disruption determinations is the most effective and efficient means of ensuring that agencies do not take retaliatory actions against employees in the guise of providing interim relief," and that it would be "absurd to require the time and expense of an additional administrative action to protect an employee from abuse in the interim relief process when the Board can effectively protect the employee at little or no marginal cost." The answer to this argument is that the board does not have the authority to determine the most efficient and effective means to prevent agency retaliation—it has only as much authority as Congress chooses to give it. *Cowan,* 710 F.2d at 805; *Van Werry,* 995 F.2d at 1050. Congress did not grant it the authority to review an agency's determination made under section 7701(b)(2), and it is not for the board to supplant the remedies Congress expressly

---

** Board regulations also require that the agency notify the employee and the board that an undue disruption determination has been made, and require dismissal of an agency's petition for review where the agency does not submit evidence that such notice has been provided. 5 C.F.R. § 1201.115(b)(2), (b)(4). No one has disputed SBA's compliance with these notice and "proof of notice" requirements. For this reason, and because the question apparently was not raised properly by SBA below, OPM has taken no position on whether the board's dismissal regulation exceeds its statutory authority under 5 U.S.C. § 7701(b)(2), and we do not address that issue.

provided or create new remedies which it believes Congress overlooked. *See United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990).

#### Conclusion

Accordingly, the decision of the Merit Systems Protection Board is reversed.

#### COSTS

All parties to bear their own costs.

*REVERSED.*