**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2022 MSPB 18**

Docket No. CB-1215-14-0012-A-1

**Katherine Coffman,**

**Petitioner,**

**v.**

**Office of Special Counsel and Department of Homeland Security,**

**Respondents.**

June 29, 2022

Debra L. Roth, Esquire and Julia H. Perkins, Esquire, Washington, D.C.,
   for the petitioner.

Emilee Collier, Esquire, Rachel A. Venier, Esquire and Mariama
   Liverpool, Esquire, Washington, D.C., for the Office of Special Counsel.

Lindsay K. Solensky and Philip Carpio, Washington, D.C., for the
   Department of Homeland Security.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member
Member Leavitt recused himself and
did not participate in the adjudication of this appeal.

**OPINION AND ORDER**

¶1      The Office of Special Counsel (OSC) has filed a petition for review, and the petitioner has filed a cross petition for review of an addendum initial decision, which granted the petitioner's request for attorney fees and ordered OSC to pay her $490,503.58 in fees and expenses. For the reasons set forth below, we

AFFIRM the administrative law judge's (ALJ's) findings that the petitioner is a prevailing party and that fees are warranted in the interest of justice. We MODIFY the initial decision to find that $517,506.19 in attorney fees and expenses were reasonable and incurred in the petitioner's defense of OSC's disciplinary action against her. We GRANT OSC's petition for review, VACATE the ALJ's finding that OSC must pay these fees, and FIND INSTEAD that the Department of Homeland Security (DHS), as the petitioner's employing agency, is obligated to pay these fees pursuant to 5 U.S.C. § 1204(m)(1) (2012). We also DENY the petitioner's cross petition for review.

## BACKGROUND

¶2 On April 8, 2014, OSC filed an eight-count complaint seeking disciplinary action against the petitioner, a Deputy Assistant Commissioner for Human Resources Management at Customs and Border Protection (CBP), DHS, for allegedly violating 5 U.S.C. § 2302(b)(1)(E)[1] and 5 U.S.C. § 2302(b)(6)[2] when she participated in CBP's efforts to hire three candidates for career appointments who were favored by the then-recently appointed CBP Commissioner. *Special Counsel v. Coffman*, 124 M.S.P.R. 130, ¶¶ 2-5 (2017); *Special Counsel v. Coffman*, MSPB Docket No. CB-1215-14-0012-T-1, Complaint File (CF), Tab 1. After a 6-day hearing, the ALJ found that OSC did not prove any of the counts in its complaint and imposed no discipline on the petitioner. *Coffman*, 124 M.S.P.R. 130, ¶¶ 6-17; CF, Tab 95. On review, the Board affirmed the ALJ's conclusions that OSC did not prove that the petitioner intentionally committed any unlawful

---

[1] Section 2302(b)(1)(E) prohibits discriminating for or against an employee or applicant on the basis of marital status or political affiliation.

[2] Section 2302(b)(6) prohibits the granting of any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for the purpose of improving or injuring the prospects for employment of any particular person.

hiring practice and that no discipline was warranted. *Coffman*, [124 M.S.P.R. 130](#), ¶¶ 18-57.

¶3        The petitioner timely filed a motion for attorney fees. *Coffman v. Office of Special Counsel*, MSPB Docket No. CB-1215-14-0012-A-1, Attorney Fees File (AFF), Tab 3. The ALJ issued an order that added DHS as a party to the fee matter. AFF, Tab 6. The ALJ made the following interim findings: (1) the petitioner was a prevailing party; (2) fees should be awarded in the interest of justice; and (3) an award of $475,106.97 was reasonable and incurred by the petitioner in her defense of OSC's disciplinary action. AFF, Tab 19. The ALJ directed the parties to brief the issue of which agency should pay her fees, and the parties responded. AFF, Tab 19 at 13-14, Tabs 24-26.

¶4        The ALJ subsequently issued an addendum initial decision in which he made the following findings of fact: (1) OSC presented no evidence that the petitioner intentionally committed a prohibited personnel practice (PPP) as described in the eight counts in its complaint; (2) the petitioner incurred attorney fees and expenses in the amount of $490,503.58; (3) her attorneys' hourly rates were reasonable; and (4) it was in the interest of justice to award her fees because she was substantially innocent of the charges and OSC knew or should have known that it would not prevail on the merits. AFF, Tab 27, Initial Decision (ID) at 1-14. In pertinent part, the ALJ applied the 2011 version of [5 U.S.C. § 1204](#)(m)(1), which required payment by the "agency involved," and he determined OSC was "solely" responsible for the payment of the petitioner's attorney fees and expenses. ID at 14-18.

¶5        OSC has filed a petition for review, the petitioner and DHS have each filed responses, and OSC has filed a reply. Petition for Review (PFR) File, Tabs 6, 12-13, 19-20. On review, OSC contends that the petitioner was not entitled to an award of fees and expenses in the interest of justice; alternatively, OSC contends that the ALJ erred because [5 U.S.C. § 1204](#)(m)(1) was modified in 2012 to require the petitioner's employing agency to pay fees. PFR File, Tab 6. DHS

does not contest that awarding fees is in the interest of justice, but it asserts that OSC should pay.  PFR File, Tab 12.

¶6     In her cross petition for review, the petitioner asserts that the Board should apportion the awarded fees between OSC and DHS by applying the 2011 and 2012 versions of section 1204(m)(1) successively.  PFR File, Tab 13 at 24-25. The petitioner also supplements her claim for fees and expenses to include an additional $26,692.50 in fees and $310.11 in expenses, which would bring the total attorney fees and expenses to $517,506.19.  *Id.* at 25-27.

## ANALYSIS

¶7     In the initial decision, the ALJ stated that the following requirements must be established in order to grant a request for attorney fees:  (1) the petitioner must be a prevailing party; (2) the award of fees must be warranted in the interest of justice; and (3) the fees awarded must be reasonable.  ID at 5-6.  None of the parties disputes the applicability of this standard to this matter, and we address each of the requirements herein.

We affirm the ALJ's finding that the petitioner was a prevailing party.

¶8     None of the parties challenges on review the ALJ's finding that the petitioner was a prevailing party.  ID at 6-7; PFR File, Tab 6 at 15 n.12, Tab 12 at 4-5.  Because the ALJ found, and the Board affirmed, that OSC proved none of the eight charges against the petitioner, we affirm the ALJ's conclusion that she is a prevailing party.  *See Santella v. Special Counsel*, 86 M.S.P.R. 48, ¶ 21 (2000) (finding that the petitioners were prevailing parties because, among other things, OSC alleged that they violated 5 U.S.C. § 2302(b)(8) four times, and the Board agreed with the petitioners that none of the counts should be sustained), *aff'd on recons.*, 90 M.S.P.R. 172 (2001), *aff'd sub nom. James v. Santella*, 328 F.3d 1374 (Fed. Cir. 2003).

<u>We find that the petitioner reasonably incurred $517,506.19 in attorney fees and expenses in her defense of OSC's disciplinary action.</u>

¶9        None of the parties disputes the ALJ's finding that the petitioner incurred attorney fees and expenses in her defense of OSC's disciplinary action and that her attorneys' hourly rates were reasonable.  ID at 4, 13-14; PFR File, Tab 6 at 15 n.12, Tab 12 at 4-5.  We have reviewed the petitioner's supplemental information, PFR File, Tab 13 at 25-38, and we find that she reasonably incurred an additional $26,692.50 in fees and $310.11 in expenses, thereby bringing the total fee award to $517,506.19.

<u>We agree with the ALJ that the payment of fees is warranted in the interest of justice.</u>

¶10        An attorney fee award by the Board may be warranted in the interest of justice in circumstances such as the following:  (1) the agency engaged in a PPP; (2) the agency's action was clearly without merit or wholly unfounded, or the employee was substantially innocent of the charges; (3) the agency initiated the action in bad faith; (4) the agency committed a gross procedural error; or (5) the agency knew or should have known that it would not prevail on the merits.  *Allen v. U.S. Postal Service*, 2 M.S.P.R. 420, 434‑35 (1980).  None of the parties challenges the ALJ's use of the *Allen* factors to evaluate whether an award of fees is warranted in the interest of justice in this matter.[3]

¶11        In the initial decision, the ALJ determined that payment of fees and expenses was warranted in the interest of justice because the petitioner was substantially innocent of the charges (*Allen* factor 2) and OSC knew or should have known that it would not prevail on the merits (*Allen* factor 5).  ID at 8-13.  OSC contends that the ALJ's findings regarding *Allen* factors 2 and 5 were

---

[3] Although *Allen* involved the general fee provision at 5 U.S.C. § 7701(g)(1), the U.S. Court of Appeals for the Federal Circuit affirmed the Board's finding that the substantially innocent *Allen* factor also applies to cases arising under 5 U.S.C. § 1204(m)(1).  *Santella*, 328 F.3d at 1376-84.

erroneous.[4]  PFR File, Tab 6 at 16-34.  For the following reasons, we find that the petitioner was substantially innocent of the charges against her, and we affirm the ALJ's conclusion that fees are warranted in the interest of justice.[5]

¶12        In his analysis of the substantial innocence factor, the ALJ noted that OSC did not prove any of the eight charges against the petitioner.  ID at 8.  The ALJ criticized OSC's decision to call the petitioner as a witness in its case in chief; he noted that OSC's decision to do so resulted in the petitioner "affirmatively disprov[ing]" any intentional violation because her testimony "clearly established that she played no role, either directly or indirectly, in either the creation of the three vacancy announcements, position descriptions, resumes, and/or the . . . application packages" at issue.  *Id.*  The ALJ also found that the petitioner's testimony "established her good faith reliance upon professionals within her agency's human resource function" and "refuted any notion that her actions in the case were motivated by either politics or a desire to grant an unlawful preference."  ID at 8-9.  The ALJ further found that, "[l]ong before the hearing," OSC knew that agency witness J.N. was "unbiased," had "nearly unassailable credibility," "had direct personal knowledge of many essential facts," and would provide testimony that was "highly exculpatory" of the petitioner.  ID at 9.  Similarly, the ALJ found that, "[l]ong before the hearing," OSC knew that agency witness A.H. would "exculpate" the petitioner.  ID at 9-10.

---

[4] DHS does not challenge the ALJ's finding that fees were warranted in the interest of justice.  PFR File, Tab 12 at 5.

[5] In his interim findings, attached to the addendum initial decision, the ALJ stated that "OSC's conduct is tantamount to bad faith, as identified in Allen Factor 3."  ID at 41.  Because we agree with the ALJ that the petitioner was substantially innocent (*Allen* factor 2), we need not address OSC's arguments regarding *Allen* factor 5 or the ALJ's reference to bad faith in his interim findings.  PFR File, Tab 6 at 16-28, 34-35; *see Miller v. Department of the Army*, 106 M.S.P.R. 547, ¶ 11 n.* (2007) (concluding that because attorney fees were warranted under the fifth *Allen* factor, the Board need not consider the appellant's remaining arguments that she is entitled to fees under other *Allen* factors).

¶13    In challenging the ALJ's finding that the petitioner was substantially innocent of the charges, OSC makes the following assertions: (1) it had a reasonable basis for filing the complaint against the petitioner; (2) the ALJ misconstrued its litigation strategy and erroneously criticized OSC for focusing on the petitioner's "improbable" and shifting narrative; (3) the ALJ improperly conflated the petitioner's status as a prevailing party and his conclusion that she was substantially innocent of the charges; and (4) the petitioner's "fault" must be taken into account in analyzing substantial innocence.  PFR File, Tab 6 at 28-34. These arguments are unavailing.

¶14    OSC's first two arguments concern the ALJ's criticism of its decision to file the complaint against the petitioner and its legal strategy.  Our reviewing court has directed that the standard in *Allen* factor 2 (substantial innocence) "refers to the result of the case [before] the Board, not to the evidence and information available prior to the hearing." *Yorkshire v. Merit Systems Protection Board*, 746 F.2d 1454, 1457 (Fed. Cir. 1984).  However, both the Board and the court have recognized that *Allen* factors 2 and 5 are related and may sometimes overlap. *Id.* at 1457 n.5; *Social Security Administration v. Goodman*, 33 M.S.P.R. 325, 332 n.5 (1987).  Indeed, the court in *Yorkshire* noted that, if an agency "possesses no credible evidence prior to the hearing before the Board ([*Allen* factor] 5), the result of the case will *usually* be in favor of the employee ([*Allen* factor] 2)." *Yorkshire*, 746 F.2d at 1457 n.5 (emphasis in original).  The ALJ's criticism of OSC's legal strategy and his focus on what OSC knew before the hearing in his analysis of substantial innocence does not constitute prejudicial error and does not provide a basis for reversing the initial decision, *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984), because the ALJ's finding that OSC did not prove any of the charges, which was affirmed by the Board, supports the conclusion that the petitioner was substantially innocent.  *See, e.g.*, *Yorkshire*, 746 F.2d at 1458 (finding that an employee "must prevail on substantially all the charges to be found 'substantially innocent'").

¶15          OSC also contends that the ALJ "made no meaningful distinction" between the petitioner's status as a prevailing party and the conclusion that she was substantially innocent; thus, the ALJ's improper conflation of these concepts renders the *Allen* factors "superfluous."  PFR File, Tab 6 at 29.  This is not a novel argument.  In *James*, 328 F.3d at 1381-82, the U.S. Court of Appeals for the Federal Circuit rejected the Office of Personnel Management's nearly identical argument in this regard.  First, the *James* court noted that OSC may bring multiple charges against an employee, and it is possible or probable that "at least some charges will sometimes be sustained when others are not, resulting in only a partial victory for the charged employee" that would not "automatically" result in prevailing party status or a finding that the employee was substantially innocent.  *Id.*  Second, the *James* court noted that there are circumstances when a prevailing party might not be substantially innocent, and it cited *Sterner v. Department of the Army*, 711 F.2d 1563 (Fed. Cir. 1983), in which the employee confessed to two of five charges, and *Wise v. Merit Systems Protection Board*, 780 F.2d 997 (Fed. Cir. 1985), in which the employee "deliberately withheld exculpatory evidence from his employing agency." *James*, 328 F.3d at 1382.

¶16          The circumstances of *Sterner* are not present here.  However, we have considered OSC's assertion that its charges against the petitioner were reasonable and were the direct result of her inconsistent statements and lack of candor.  PFR File, Tab 6 at 31-32; *see Wise*, 780 F.2d at 1000 (explaining that the "substantially innocent" standard is not satisfied by a petitioner who knows that he was substantially innocent of the charges, can prove that substantial innocence, and "deliberately does not communicate all the facts to the deciding official which would lead the deciding official to rule against the removal action").  OSC asserts in this regard that the petitioner claimed for the first time at the hearing that two of the hiring packages that she had certified were in a state of disarray when she received them, and the Board used this testimony to reconcile an inconsistency between her OSC interview and testimony during the merits phase.

PFR File, Tab 6 at 32. OSC also asserts that the petitioner stated in her testimony before the ALJ that she reviewed one of the application packages in the presence of knowledgeable subordinates so she could ask questions; however, in her OSC testimony, which was closer in time to the events at issue, she said that she reviewed the application package alone. *Id.* OSC contends that, because the information that the petitioner withheld would have given it an opportunity to conduct further investigation of her defense, her failure to disclose such information precludes an award of fees. *Id.* We find this argument unavailing.

¶17    In the merits initial decision, the ALJ rejected OSC's efforts to prove the petitioner's culpability through the transcripts of two interviews conducted by OSC before it filed the complaint in this matter. CF, Tab 95 at 59. The ALJ gave "more weight" to the petitioner's in-court testimony than to the transcript of the OSC interview because the petitioner had the benefit of legal counsel and the fruits of prehearing discovery from which she could prepare herself. *Id.* at 59-60. The Board acknowledged a potential discrepancy in the petitioner's testimony relating to her recognition of certain names in connection with the hiring process, but it reconciled the discrepancy because she received certain application packages in a state of disarray. *Coffman*, 124 M.S.P.R. 130, ¶ 25. The Board stated that it fully considered the petitioner's OSC interview testimony that the ALJ found was outweighed by her hearing testimony, and it found that a different outcome was not warranted because OSC did not establish that the petitioner intentionally committed an unlawful hiring practice. *Id.*, ¶¶ 22-25. We are not persuaded that the inconsistencies cited by OSC on review, individually or taken together, amount to withholding exculpatory evidence. Moreover, it is hard to imagine what, if any, additional investigatory work OSC would have conducted if it had this information. Indeed, OSC's petition for review acknowledges that it "interviewed 38 individuals and reviewed several thousand documents during the course of its investigation." PFR File, Tab 6 at 14. OSC offers no persuasive evidence that it would not have sought disciplinary action against the petitioner if

it had this information. Accordingly, we agree with the ALJ that the petitioner was substantially innocent of the charges.

¶18 OSC asserts that, even if the petitioner was substantially innocent, the Board should exercise its discretion and not award fees because of OSC's "unique role in protecting the merit system." PFR File, Tab 6 at 33-34. In this regard, OSC asserts that it "must be permitted to bring challenging, even controversial cases, in an effort to define and develop the prohibitions set forth in 5 U.S.C. § 2302(b)." *Id.* at 33. We are not persuaded by this argument. Both versions of 5 U.S.C. § 1204(m)(1) state that fees "may" be awarded if the petitioner is a prevailing party and an award is warranted in the interest of justice, but we decline OSC's invitation to invoke our discretion and not award fees in this matter. Importantly, there is nothing inconsistent between OSC's authority to initiate disciplinary action against Federal employees whom it believes committed a PPP, 5 U.S.C. § 1215(a)(1)(A), and Congress's clear intent to allow employees in unsuccessful disciplinary actions to recoup attorney fees pursuant to 5 U.S.C. § 1204(m)(1). *See, e.g., James*, 328 F.3d at 1383 ("We agree with the Board that Congress's intent to invigorate OSC enforcement [through the OSC Reauthorization Act] in no way categorically precludes a separately manifested intent that employees who successfully defend an OSC disciplinary action recoup attorney fees [under the earlier version of 5 U.S.C. § 1204(m)(1)]."). The petitioner is a prevailing party, we have affirmed the ALJ's determination that she is substantially innocent, and we find it appropriate to award fees to the petitioner pursuant to 5 U.S.C. § 1204(m)(1) in this matter.

Pursuant to 5 U.S.C. § 1204(m)(1) (2012), DHS, as the agency where the petitioner was employed, is obligated to pay the petitioner's attorney fees and expenses.

¶19 Having decided that the petitioner is entitled to an award of fees in the interest of justice, there is one issue left to resolve: in an OSC disciplinary action

arising under 5 U.S.C. § 1215,[6] which agency should pay the petitioner's fees?  A brief discussion of 5 U.S.C. § 1204(m)(1) is instructive.

¶20        In 1994, Congress created 5 U.S.C. § 1204(m)(1), which stated, in relevant part, that the Board or an ALJ designated to hear a case arising under section 1215 "may require payment by the agency involved of reasonable attorney fees incurred by an employee . . . if the employee . . . is the prevailing party and the Board [or ALJ] . . . determines that payment by the agency is warranted in the interest of justice."   United States Office of Special Counsel, Merit Systems Protection Board: Authorization, Pub. L. No. 103-424, § 2, 108 Stat. 4361 (1994).  In *Santella*, 86 M.S.P.R. 48, ¶¶ 2-3, 12-18, the Board addressed the applicability of section 1204(m)(1) in a fee matter that, like this matter, stemmed from an OSC disciplinary action.   The Board reviewed the legislative history of 5 U.S.C. § 1204(m)(1), determined that OSC was the "agency involved," and ordered OSC to pay the petitioners' fees.  *Id.*, ¶¶ 12-18, 20-40.   The Board's decision was affirmed by the U.S. Court of Appeals for the Federal Circuit in *Santella*, 328 F.3d 1374.

¶21        In 2012, Congress made a significant change to section 1204(m)(1) when it struck the term "agency involved" and replaced it with "agency where the prevailing party was employed."  Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, § 107(a), 126 Stat. 1465, 1469 (2012).  The Senate Report for the WPEA explained that the change in section 1204(m)(1) was necessary because of the Board's decision in *Santella* and the corresponding financial burden on OSC, "a small agency with a limited budget," to pay fees in disciplinary actions.  S. Rep. No. 112-155, at 15-16 (2012), *as reprinted in* 2012 U.S.C.C.A.N. 589, 603-04.  The Senate Report articulated the concern that "[s]hould the [*Santella*] case remain valid law, the OSC would be subject to

---

[6] The provision at 5 U.S.C. § 1215(a)(1)(A) authorizes OSC to take disciplinary action against an employee if it determines that the employee committed a PPP.

heavy financial penalties unless it can predict to a certainty that it will prevail before bringing a disciplinary action." *Id.* at 16. The Senate Report further stated that such a financial burden on OSC "hinders [its] use of disciplinary action as an enforcement mechanism and threatens the OSC's ability to implement and enforce the [whistleblower protection statutes]." *Id.* To correct this problem, section 107(a) of the WPEA modified section 1204(m)(1) to state that, in a case arising under 5 U.S.C. § 1215, the Board or ALJ,

> may require payment by the *agency where the prevailing party was employed* . . . at the time of the events giving rise to the case of reasonable attorney fees incurred by an employee . . . if the employee . . . is the prevailing party and the Board [or ALJ] . . . determines that payment by the agency is warranted in the interest of justice.

5 U.S.C. § 1204(m)(1) (2012) (emphasis supplied). This change to section 1204(m)(1) became effective December 27, 2012. WPEA, § 202, 126 Stat. at 1476.

¶22　　In the initial decision, the ALJ determined that the WPEA did not apply because the petitioner's case did not involve the whistleblower protection statutes, and OSC instituted its investigation of the petitioner in 2011, well before the December 27, 2012 effective date of the WPEA. ID at 15-16. The ALJ found instead that the 2011 version of 5 U.S.C. § 1204(m)(1) applied, and he relied on *Santella* to find that OSC, as the agency involved, was solely responsible for payment of the petitioner's fees. ID at 14-17. Alternatively, the ALJ held that, even if the WPEA applied, the *Allen* principles of justice "clearly exonerate [DHS] and indict OSC" because, among other things, DHS did not participate in the investigation or prosecution of the petitioner (its employee), the evidence revealed that OSC "was the exclusive and driving force behind [the petitioner's] prosecution," and "OSC's investigation and prosecution were clearly without merit, were wholly unfounded, and likely the product of bad faith." ID at 16.

¶23    In their petition for review submissions, the parties offer different answers to the question of which agency should pay the petitioner's fees and which statutory provisions are applicable. For instance, OSC contends that, based on the legislative history and the date that the complaint was filed, the 2012 version of 5 U.S.C. § 1204(m)(1) applies. PFR File, Tab 6 at 4-11. By contrast, DHS and the petitioner both assert that the ALJ properly applied the 2011 version of section 1204(m)(1). PFR File, Tab 12 at 7-9, Tab 13 at 8-9, 20-24. DHS argues in the alternative that 5 U.S.C. § 7701(g)(1), a general fee provision, is applicable to a fee award in an OSC disciplinary action. PFR File, Tab 12 at 9-17. Finally, the petitioner asserts in her cross petition that the Board should apportion fees by applying the 2011 version of 5 U.S.C. § 1204(m)(1) for fees that she incurred up until the December 27, 2012 effective date of the WPEA and by applying the 2012 version of 5 U.S.C. § 1204(m)(1) to fees incurred starting on that date. PFR File, Tab 13 at 24-25.

¶24    For the reasons described herein, we find that the ALJ erred when he relied on the 2011 version of 5 U.S.C. § 1204(m)(1), and we are not persuaded that it is appropriate to use section 7701(g)(1) or the petitioner's suggestion of apportionment to resolve the issue of which agency is responsible to pay the petitioner's fees.

*The ALJ erred when he applied the 2011 version of 5 U.S.C. § 1204(m)(1) to this matter.*

¶25    On review, OSC asserts, among other things, that the ALJ ignored the plain language of 5 U.S.C. § 1204(m)(1) and disregarded Congressional intent to insulate OSC from liability to pay fees. PFR File, Tab 6 at 4-10. We grant OSC's petition for review because, based on our review of the 2011 version of section 1204(m)(1), the legislative history underlying Congress's decision to amend this section in 2012, the effective date of this change, and the date the complaint was filed, the 2012 version of section 1204(m)(1) controls the outcome of this matter.

¶26      We have considered the petitioner's assertion that the earlier version of section 1204(m)(1) applies because OSC began its investigation of her, and she incurred fees, in 2011, before the December 27, 2012 effective date of the WPEA. PFR File, Tab 13 at 21-24.  However, we find that the operative event in this matter is the date that OSC filed its complaint, April 8, 2014, which is well after the December 27, 2012 effective date of the WPEA.  CF, Tab 1; *see* 5 U.S.C. § 1215(a)(1)(A) (authorizing OSC to prepare and file with the Board a complaint against the employee if it determines that disciplinary action should be taken against the employee for having committed a PPP).  Importantly, OSC's complaint for disciplinary action constitutes "a case arising under section 1215" as described in 5 U.S.C. § 1204(m)(1), and the petitioner could only achieve prevailing party status after such a complaint has been filed and adjudicated in her favor.  *Cf. Krafsur v. Social Security Administration*, 122 M.S.P.R. 679, ¶¶ 7–13 (2015) (finding that the respondent ALJ was not a prevailing party, a prerequisite to obtain attorney fees under the Equal Access to Justice Act,[7] because the agency withdrew its complaint for disciplinary action against him and the Board dismissed the complaint as withdrawn).

¶27      We are not persuaded by the ALJ's attempt to distinguish OSC disciplinary actions taken pursuant to 5 U.S.C. § 1215 and whistleblower appeals.  ID at 15–16.  Rather, the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (1989), amended 5 U.S.C. § 1206(g) to incorporate the language of that section concerning the presentment of a complaint into a new section 1215(a).  *Special Counsel v. Santella*, 46 M.S.P.R. 99, 101 n.1 (1990).

---

[7] The provision at 5 U.S.C. § 504(a)(1) states that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust."

Thus, OSC disciplinary actions taken pursuant to 5 U.S.C. § 1215 fall under the same statutory scheme as whistleblower appeals.

¶28    Accordingly, because the 2012 version of section 1204(m)(1) requires payment by the employing agency, we vacate the initial decision in this regard, and we find that DHS is solely responsible for the payment of the petitioner's fees.

> *The general fee provision at 5 U.S.C. § 7701(g)(1) does not apply to this matter.*

¶29    Although DHS did not file a petition for review or cross petition for review, it asserts that the Board may exercise discretion to determine under which remedial statute to award fees.  PFR File, Tab 12 at 9-17.  In this regard, DHS asserts, among other things, that the general fee provision at 5 U.S.C. § 7701(g)(1) authorizes the Board to award fees in "any case" involving PPPs, and the Board may grant a remedy under a statute of general application even when there is a specific remedial provision.  *Id.*  We are not persuaded by these arguments.

¶30    Under 5 U.S.C. § 7701(g)(1), the Board or an ALJ "may require payment by the agency involved of reasonable attorney fees incurred by an employee . . . if the employee . . . is the prevailing party" and the Board or ALJ "determines that payment by the agency is warranted in the interest of justice, including any case in which a [PPP] was engaged in by the agency or any case in which the agency's action was clearly without merit."  Importantly, the "payment by the agency involved" language of section 7701(g)(1) is identical to the language in the 2011 version of section 1204(m)(1).  *Santella*, 328 F.3d at 1376-78.

¶31    Section 7701(g)(1) is an attorney fee provision that is generally applicable to Board appeals, *Jacobsen v. Department of Justice*, 101 M.S.P.R. 134, ¶ 6 (2006), whereas section 1204(m)(1) is a specific statutory fee provision that is aimed at cases "arising under section 1215."  There is well-settled precedent that specific statutory language aimed at a particular situation ordinarily controls over

general statutory language. *Biogen MA, Inc. v. Japanese Foundation for Cancer Research*, 785 F.3d 648, 656 (Fed. Cir. 2015); *Almond Brothers Lumber Company v. United States*, 651 F.3d 1343, 1354 (Fed. Cir. 2011); *Jacobsen*, 101 M.S.P.R. 134, ¶ 7 (finding that the administrative judge erred in applying the attorney fee criteria under 5 U.S.C. § 7701(g)(1), which were generally applicable to Board appeals, rather than the attorney fees criteria under 38 U.S.C. § 4324(c)(4), which were specifically applicable to appeals under Uniformed Services Employment and Reemployment Rights Act of 1994); *Lee v. Department of Justice*, 99 M.S.P.R. 256, ¶ 25 (2005). DHS acknowledges this longstanding precedent. PFR File, Tab 12 at 13. However, it distinguishes cases like *Jacobsen* and others by asserting that the Board has authority to grant a remedy under a statute of general application, even when the statute under which an appeal is brought contains a specific remedial provision. *Id.* at 12-14. DHS notes that, in *Auker v. Department of Defense*, 86 M.S.P.R. 468 (2000), the Board found that section 7701(g)(1) applied to individual right of action (IRA) appeals, even though the whistleblower protection statutes contained a specific fee provision tailored to such appeals in 5 U.S.C. § 1221(g). PFR File, Tab 12 at 12-14.

¶32    DHS's argument is not persuasive because this matter is distinguishable from *Auker*. Mr. Auker filed an IRA appeal, alleging that his 1-day suspension for misconduct was taken in reprisal for his whistleblowing disclosures. *Auker*, 86 M.S.P.R. 468, ¶ 2. Mr. Auker and the agency subsequently entered into a settlement agreement, the administrative judge dismissed the appeal without making any findings on the merits, and Mr. Auker filed a motion for attorney fees. *Id.*, ¶¶ 2-3. The administrative judge granted the motion, finding that Mr. Auker was entitled to an award under 5 U.S.C. § 1221(g)(2), which stated that an appellant in an IRA appeal is entitled to an award of attorney fees and costs "[i]f [he] is the prevailing party before the [Board], and the decision is based on a finding of a [PPP]." *Id.*, ¶¶ 3-4. On review, however, the Board found that section 1221(g)(2) did not apply because, among other things, there was no

finding of a PPP. *Id.*, ¶¶ 4-6. The Board held instead that attorney fees may be awarded to Mr. Auker under section 7701(g)(1). *Id.*, ¶¶ 8-14.

¶33    In reaching this conclusion, the Board in *Auker* relied on a decision from the U.S. Court of Appeals for the D.C. Circuit, which held that the reference in 5 U.S.C. § 7701(g)(1) to "'any case' involving prohibited practices plainly extends to all proceedings in which action is sought to identify and correct such practices." *Auker*, 86 M.S.P.R. 468, ¶ 9 (quoting *Frazier v. Merit Systems Protection Board*, 672 F.2d 150, 169 (D.C. Cir. 1982)). The Board in *Auker* concluded that an IRA appeal constitutes such a proceeding because it is a case in which an appellant is seeking a finding that he has been affected by a particular kind of PPP (reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8)) and in which he is seeking an order correcting the effects of that practice. *Auker*, 86 M.S.P.R. 468, ¶ 10. The *Auker* Board's reliance on *Frazier* is understandable because, similar to an IRA appeal seeking corrective action against an agency, *Frazier* involved an OSC corrective action proceeding, and the Board "permitted the [employees against whom reprisal allegedly occurred], through their attorneys 'fully [to] participate in this proceeding as any other party.'" *Frazier*, 672 F.2d at 153, 155, 168. Relevant to this matter, however, the *Frazier* court limited its decision regarding the broad applicability of section 7701(g)(1) in fee matters. Although the court first stated that section 7701(g)(1) provides the Board authority to award fees "in any case in which an employee . . . appears as a party," it later noted that Congress granted the Board the authority to award such fees "in all cases within its jurisdiction in which *complaining* employees appear as parties." *Id.* at 169-70 (emphasis added). In contrast to an OSC corrective action or an IRA appeal, the petitioner is not a complaining employee in an OSC disciplinary action. Thus, we do not find *Auker* or its reliance on the language from *Frazier* applicable in an OSC disciplinary action.

¶34    Moreover, the legislative history of the relevant statutory provisions distinguishes this matter from *Auker*. In *Auker*, 86 M.S.P.R. 468, ¶ 11, the Board

remarked that the legislative history of 5 U.S.C. § 1221 indicated that the drafters considered 5 U.S.C. § 7701(g)(1) to be a basis for awarding attorney fees in IRA appeals. Moreover, the Board found that Congress intended in 5 U.S.C. § 1221(g) to make it easier for appellants who prevail in IRA appeals to recover attorney fees. *Id.*, ¶ 12. By contrast, the application of section 7701(g)(1) to this matter, which would obligate OSC, as the agency involved, to pay the petitioner's fees, runs counter to Congress's clear intent in the WPEA not to burden OSC with such liability. *Supra*, ¶ 21. Indeed, if Congress wanted 5 U.S.C. § 7701(g)(1) to apply to the petitioner's request for fees in an OSC disciplinary action, there would have been no reason for it to have modified 5 U.S.C. § 1204(m)(1) in the WPEA.

¶35 We have considered DHS's remaining arguments in support of its assertion that 5 U.S.C. § 1204(m)(1) is not the exclusive remedy in this matter, but none warrant a different outcome. For example, DHS asserts that 5 U.S.C. § 1222 and 5 C.F.R. § 1201.202(a) give the Board discretion to award fees under section 7701(g)(1). PFR File, Tab 12 at 9, 14, 16-17. Section 1222 states that, with exceptions not relevant to this matter, "nothing in this chapter or chapter 23 shall be construed to limit any right or remedy available under a provision of statute which is outside of both this chapter and chapter 23." The regulation at 5 C.F.R. § 1201.202(a) identifies various statutory authorities for awarding fees, "includ[ing], but [] not limited to," 5 U.S.C. § 1204(m). Even if section 1222 or 5 C.F.R. § 1201.202(a) gives us discretion to award fees under section 7701(g)(1), we decline to rely on this authority because both provisions directly contravene the specific statutory language of the 2012 version of 5 U.S.C. § 1204(m)(1) and the corresponding congressional intent. *See, e.g.*, *supra*, ¶ 31 (discussing the precedent that specific statutory language aimed at a particular situation ordinarily controls over general statutory language); *Johnson v. Department of Justice*, 71 M.S.P.R. 59, 67 (1996) (stating that the provisions of

a statute will prevail in any case in which there is a conflict between a statute and an agency regulation).

> *We decline the petitioner's request to apportion payment of her fees between OSC and DHS.*

¶36    In her cross petition, the petitioner suggests that OSC should pay for the portion of her fees and expenses incurred before the effective date of the WPEA, and DHS should pay for the fees and expenses incurred starting on the December 27, 2012 effective date of the WPEA. PFR File, Tab 13 at 24-25; AFF, Tab 26 at 12-13. The petitioner has identified no persuasive legal precedent to support her request to apportion payment of her fees in this manner. Moreover, the 2012 version of 1204(m)(1), which is applicable to this matter for the reasons discussed above, does not support her request for apportionment. Therefore, we deny the petitioner's cross petition for review.

Conclusion

¶37    We recognize that an agency like DHS, which likely had little to no involvement in OSC's decision to pursue disciplinary action against the petitioner,[8] is obligated to pay the petitioner's substantial fees, which now total more than half a million dollars. The adverse impact of 5 U.S.C. § 1204(m)(1) on an agency with a small budget could be significant. However, the Board's role as an adjudicatory agency is not to set or debate policy, and Congress has spoken clearly on this issue. *See King v. Jerome*, 42 F.3d 1371, 1375-76 (Fed. Cir. 1994) ("[I]t is not for the [Merit Systems Protection] [B]oard to supplant the remedies Congress expressly provided or create new remedies which it believes Congress

---

[8] In its petition for review, OSC states that DHS asked it to "take the lead" in pursuing discipline against the petitioner and two other agency officials whom OSC deemed to be "culpable," PFR File, Tab 6 at 15, but DHS did not address OSC's assertion in its response. Because the statements of a party's representative in a pleading do not constitute evidence, *Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995), we do not address OSC's assertion in this regard.

overlooked."). We are therefore bound to follow the "unambiguously expressed intent of Congress," *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984), as set forth in the WPEA version of 5 U.S.C. § 1204(m)(1).

¶38 Accordingly, for the reasons described in this Opinion and Order, we affirm the ALJ's findings that the petitioner is a prevailing party and that payment of her fees and expenses are warranted in the interest of justice. We further find that $517,506.19 is a reasonable amount of fees and expenses that were incurred in her defense of OSC's disciplinary action. We vacate the ALJ's finding that OSC should pay the petitioner's fees, and we find instead that DHS is solely obligated to pay these fees pursuant to 5 U.S.C. § 1204(m)(1) (2012).

**ORDER**

¶39 This is the final decision of the Merit Systems Protection Board in this matter. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

¶40 We ORDER DHS to pay the petitioner attorney fees and expenses totaling $517,506.19. DHS must complete this action no later than 20 days after the date of this decision. *See generally* title 5 of the United States Code, section 1204(m)(1) (5 U.S.C. § 1204(m)(1)).

¶41 We also ORDER DHS to tell the petitioner and the attorney promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. We ORDER the petitioner and the attorney to provide all necessary information that the agency requests to help it carry out the Board's Order. The petitioner and the attorney, if not notified, should ask DHS about its progress. *See* 5 C.F.R. § 1201.181(b).

¶42 No later than 30 days after DHS tells the petitioner and the attorney that it has fully carried out the Board's Order, the petitioner or the attorney may file a petition for enforcement with the Office of the Clerk of the Board, if the

petitioner or the attorney believes that DHS did not fully carry out the Board's Order. The petition should contain specific reasons why the petitioner or the attorney believes DHS has not fully carried out the Board's Order, and the petition should include the dates and results of any communications with DHS. *See* 5 C.F.R. § 1201.182(b).

## NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

/s/

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.